E. Less WILLIAMS and Robert Y. Williams, partners d/b/a Williams Peach Orchard, Plaintiffs,

v.

Harris M. McRAE, Defendant.

Civ. A. 2259.

United States District Court
W. D. South Carolina,
Rock Hill Division.

Dec. 5, 1958.

George A. Gill, Jr., Rock Hill, S. C., for plaintiffs.

George W. Keels, Florence, S. C., J. Elsie Webb, Rockingham, N. C., for defendant.

WYCHE, Chief Judge.

This is an action by plaintiffs, who are peach growers in York County, South Carolina, against the defendant, who is a peach broker at Ellerbe, North Carolina, to recover losses sustained by them resulting from defendant's failure, as a broker, to dispose of plaintiffs' peaches in accordance with the agreement of the parties.

In compliance with Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A., I find the facts specially and state my conclusions of law thereon, in the above cause, as follows:

### Findings of Fact

1. The plaintiffs E. Less Williams and Robert Y. Williams are partners doing business as Williams Peach Orchard and they are residents of York County, South Carolina, and they own and maintain a peach orchard and peach packing shed located in York County, South Carolina.

2. The defendant Harris M. McRae is a resident of Richmond County, North Carolina, and is engaged in the fruit brokerage business at Ellerbe, North Carolina. During the years 1956, and 1957, the defendant transacted business in the State of South Carolina, and maintained offices at Clover, South Carolina, with his agent M. L. Sneed in charge and during this time the defendant acted as selling agent or broker for various peach growers in the York County, South Carolina, area, accepting their peaches in York County, South Carolina, and selling and delivering the peaches to various points in various other states.

3. All of defendant's business with plaintiffs was transacted by the defendant's agent Sneed and there was no personal contact between the defendant himself and the plaintiffs until after the close of the 1957 shipping season.

4. In 1956, defendant's agent Sneed contacted plaintiffs and solicited their business and represented to the plaintiffs that the defendant had large connections for the direct sale of peaches and made an offer to the plaintiffs that any peaches that the plaintiffs would deliver to the defendant for sale would be sold for prices equal to or better than the Spartanburg market as reported by the De-

partment of Agriculture, that no peaches would be shipped on consignment and that the defendant's sole charges would be a commission of 12¢ per unit for ½ bushel baskets and 16¢ per unit for ¾ bushel baskets.

5. Plaintiffs accepted defendant's offer as communicated to them by the agent Sneed and delivered certain of their peaches to the defendant in 1956, that were sold by the defendant at prices that netted the plaintiffs returns, f.o.b. their shed, equal to or better than the Spartanburg market and the defendant made no other charges than the agreed commissions.

6. In 1957, the parties agreed to do business on the same basis as in 1956.

7. At the time of the renewal of the agreement in 1957, it was evident that a substantial portion of plaintiffs' peaches would be smaller than 2 inches in diameter; inasmuch as peaches less than 2 inches are not usually traded on the Spartanburg market plaintiffs inquired as to the defendant's ability to dispose of the smaller peaches and the agent Sneed represented to plaintiffs that the defendant had excellent outlets for smaller peaches and agreed that all 1¾ inch peaches delivered to the defendant would be sold at a price within $1 of the prevailing Spartanburg price for 2 inch peaches.

8. The only peaches for which plaintiffs received an accounting prior to the end of the peach-season were those peaches delivered by the plaintiffs between June 26, 1957, and July 16, 1957, the first accounting being by check dated July 12, 1957, and the last accounting being by check dated July 29, 1957, and the prices received for those peaches were substantially in line with the quoted Spartanburg prices for the respective dates of shipment and were satisfactory to plaintiffs. Peaches measuring both "2 inches and up" and "1¾ inch minimum" were included in these shipments.

9. Plaintiffs from July 17, 1957, through August 6, 1957, delivered to the defendant 9766 baskets of peaches

(again including both "2 inches and up" and "1¾ inch minimum"); no accounting was made by the defendant to the plaintiffs for these peaches until the end of the peach-season, the last shipment having been shipped from plaintiffs' peach shed on August 6, 1957, and the first accounting check having been dated at the defendant's office at Ellerbe, North Carolina, on August 6, 1957, the same date.

10. Upon the basis of the lowest Spartanburg quotations, less the agreed commissions, plaintiffs should have received the sum of $24,631.43 for the peaches shipped between July 16, 1957, and August 6, 1957, but they only received the sum of $17,863.39.

11. The only form of accounting given by the defendant to the plaintiffs, as to any shipment of peaches, was in the form of the stubs attached to checks as mentioned above and the defendant did not give the plaintiffs any notice as to the disposition of any shipment in any other manner; the only other information communicated by the defendant to the plaintiffs as to the prices received for peaches that had been sold were responses of the agent Sneed to inquiries by the plaintiffs that the peaches had brought the Spartanburg prices or better.

12. No accounting made by the defendant to the plaintiffs for peaches shipped between June 26, 1957, and July 16, 1957, contained any information to the effect that the peaches had been sold in any manner inconsistent with the agreement.

13. All of the peaches delivered by the plaintiffs to the defendant were of good quality, all being either U. S. Extra No. 1 or U. S. No. 1 and hard, or hard to firm. The defendant furnished to the plaintiffs his own private "Cream of the Crop" label to be packed with the peaches and, although the agent Sneed visited the plaintiffs' packing shed practically every day and had an opportunity to observe the peaches being packed, the defendant continued to furnish the labels throughout the packing season.

14. Contrary to the agreement that peaches would be sold for prices based on the Spartanburg market or better and that no peaches would be shipped upon consignment, defendant after July 16, 1957, sold some of plaintiffs' peaches at distant points for landed prices equal to and even below the Spartanburg f.o.b. quotations and also delivered other of plaintiffs' peaches to commission merchants whereby commissions and other charges far in excess of the agreed commissions were charged to plaintiffs resulting in a net price far below the Spartanburg f.o.b. quotations, all without the authority or consent of or notice to the plaintiffs and contrary to the agreement.

15. As a result of defendant's failure to dispose of the peaches delivered to him in the manner and for the prices agreed upon and to fully inform the plaintiffs of his acts and doings, plaintiffs have suffered damages in the sum of $6,767.04, being the difference between the sum that they should have received, according to the agreement, and the sum that they actually received.

### Conclusions of Law

1. This Court has jurisdiction of the parties and of the subject matter.

2. There was a definite offer made by the defendant, communicated by his admitted agent, and accepted by the plaintiffs, and, as a matter of law, a valid contract, supported by adequate consideration, was made by the parties in 1956; each party performed their respective obligations under the contract in 1956; in 1957, the contract was renewed with modifications as to the price for peaches not normally quoted on the Spartanburg market and the parties performed their respective obligations under the contract through July 16, 1957. After July 16, 1957, plaintiffs continued to perform their obligations under the contract but the defendant breached his obligations and duties under the contract.

3. The defendant is engaged in interstate commerce and is bound by the provisions of 7 U.S.C.A. Chapter 20A—Perishable Agricultural Commodities Act, and the Regulations and Departmental Interpretation and Construction thereof promulgated thereunder as published in Service and Regulatory Announcement No. 121, revised January, 1955, which provides as follows: "Commissions and Brokerage Charges. A broker or commission merchant may not employ another broker or commission merchant without prior authority from his principal. Additional brokerage or commission charges or other unusual expenses will be regarded as unearned unless proper authority for incurring them is shown. In the absence of an agreement permitting other charges, the usual brokerage or commission will be deemed to have been agreed to * * *. With regard to the charging of two commissions or two brokerages, it is the position of the Department that this may be done legally only with the knowledge and consent of the shipper. In a given market it is to be presumed that the agent is capable of securing adequate returns for a shipment. If he has to turn goods over to another agent for disposal it does not appear that he has performed a service entitling him to a commission. If the agent feels it wise to forward the shipment to another market, the consent of the shipper should be obtained. Gross receipts and all deductions, including double commission or double brokerage charges, must be shown on the account sales or other statement rendered. Failure to disclose all the pertinent facts in accounting to the shipper will be deemed failure truly and correctly to account within the meaning of the act."

The Department of Agriculture interpretations are followed by the Court where they are necessary to carry out the purposes of the Act, where the interpretation is reasonable, and the interpretation has been adhered to for a number of years. L. Gillarde Co. v. Joseph Martinelli & Co., Inc., 1 Cir., 169 F.2d 60.

4. A broker is bound to act in compliance with the instructions of his

principal and in conformity to the authority conferred; he is bound to disclose all material facts and to exercise reasonable skill and diligence in the transaction of the business entrusted to him; and he will be responsible for any loss resulting from his failure to do so. 9 C.J. 534, 535; Lowrance v. Swaffield, 123 S.C. 331, 116 S.E. 278.

5. Peaches shipped between July 17, 1957, and August 6, 1957, were not handled by the defendant in accordance with the agreement.

6. The defendant breached the duty imposed upon him by the Perishable Agricultural Commodities Act and the common law of the State of South Carolina, by his failure to fully and timely advise and inform the plaintiffs of the disposition made of the peaches delivered by them to him between July 17, 1957, and August 6, 1957, and of the alleged necessity for him to turn certain peaches over to commission merchants at variance with the established dealings and agreement of the parties.

7. Having found as a matter of fact that the defendant did agree that he would get the Spartanburg price or better, f.o.b. the plaintiffs' shed, and that no peaches would be shipped on consignment and that the defendant did, in fact, ship peaches on consignment and which were sold at prices substantially below the Spartanburg prices, f.o.b., and as a matter of law the defendant did breach his agreement with the plaintiffs, as well as the duties imposed upon him by law, the defendant is liable to the plaintiffs for losses sustained by them.

8. The doctrine that one is required to minimize his damages does not apply in this case as the plaintiffs did not receive notice that they were suffering a loss in time to cease shipping to the defendant and to avail themselves of more favorable markets.

9. The plaintiffs have suffered damages, for which the defendant is liable, in the sum of $6,767.04, which is computed upon the lowest Spartanburg price.

Order

It is, therefore, ordered, that the plaintiffs have judgment against the defendant in the above case in the sum of $6,767.04.